**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

| | |
|---|---|
| JOHN R. ALIVERA, | : |
| | : |
| Petitioner, | :      Civ. No. 12-2964 (RBK) |
| | : |
| v. | :      **OPINION** |
| | : |
| CHARLES E. WARREN, et al., | : |
| | : |
| Respondents. | : |

_____ :

**ROBERT B. KUGLER, U.S.D.J.**

### I.      INTRODUCTION

Petitioner is a state prisoner currently incarcerated at the New Jersey State Prison in Trenton, New Jersey.  He is proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In 2003, petitioner pled guilty to one count of murder.  He is currently serving a sentence of forty-two years and 322 days imprisonment with an eighty-five percent parole disqualifier.  He raises ineffective assistance of counsel claims in his petition; specifically:

1. Failure of trial and appellate counsel to adequately advise him on his minimum mandatory parole disqualifier.

2. Failure of trial counsel to pursue an insanity/diminished capacity defense or have an expert evaluate him to determine if he was competent to enter a plea agreement.

3. Improper coaching by counsel towards petitioner as to how to respond to the questions from the court when entering his plea.

4. Failure of counsel to provide him with transcripts of hearings, motions and grand jury minutes so that he could determine the strength of the government's case.

5. Cumulative error.

For the following reasons, the habeas petition will be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

> The victim was the mother of defendant's former girlfriend.  The girlfriend had broken off their relationship.  Angered about the break-up, defendant went to the mother's residence, placed her at gunpoint, bound her legs with duct tape, doused her with gasoline, lit a match, and departed in a waiting cab while the mother burned to death.  Defendant was eventually tracked down in California and gave a confession on videotape.

(Dkt. No. 10-19 at p. 2.)   On July 16, 2003, petitioner pled guilty to one count of murder.  (*See* Dkt. No. 10-23.)  On August 29, 2003, petitioner received a sentence of forty-three years imprisonment with an eight-five percent parole disqualifier.  (*See* Dkt. No. 10-6.)

On September 9, 2003, petitioner moved to withdraw his guilty plea.  (*See* Dkt. No. 10-3.)  Petitioner claimed that his attorney did not know of his mental illness.  (*See id.* at p. 4.)  Ultimately, on January 9, 2004, the Superior Court of New Jersey, Law Division denied petitioner's motion to withdraw his guilty plea.  (*See* Dkt. No. 10-5.)

On January 11, 2005, petitioner filed a notice of appeal.  (*See* Dkt. No. 10-7.)  However, petitioner subsequently sought to withdraw his appeal.  (*See* Dkt. No. 10-8.)  The appeal was dismissed on October 3, 2005.  (*See* Dkt. No. 10-9.)

In March, 2008, the Law Division received petitioner's *pro se* PCR petition.  (*See* Dkt. No. 10-10.)  In that *pro se* filing, petitioner claimed that trial counsel failed to pursue the possibility of an insanity/diminished capacity defense and convinced defendant to accept the plea.  On November 24, 2008, a supplemental PCR petition was submitted on petitioner's behalf by counsel.  Petitioner raised four issues in that counseled PCR brief, specifically:

---

[1] The factual background is taken from the Superior Court of New Jersey, Appellate Division opinion on petitioner's post-conviction relief ("PCR") petition that was decided on June 7, 2011.  (*See* Dkt. No. 10-19.)

1. The defendant was denied his right to the effective assistance of trial and appellate counsel, right to a fair trial and to due process of the law under the state and federal constitutions since trial counsel and the court failed to adequately advice the defendant of his minimum mandatory parole disqualifier and appellate counsel failed to argue as much.

2. The defendant was denied his right to effective assistance of trial counsel, right to a fair trial and to due process of the law under the state and federal constitutions since trial counsel failed to provide any meaningful defense.

3. The defendant's claims are not procedurally barred and, if so, the defendant received the ineffective assistance of appellate counsel.

4. The cumulative effect of the grounds for post-conviction relief identified by defendant warrant vacation of his convictions and sentences, and the grant of a new trial.

(*See* Dkt. No. 10-11.)

On June 12, 2009, the Law Division denied the PCR claims with one exception. The Law Division amended the judgment to reflect a 36.45-year period of parole ineligibility. That period was what petitioner pled to during the plea colloquy as opposed to 36.55 years (which was what he was facing as 36.55 is eighty-five percent of his forty-three year original sentence). (*See* Dkt. No. 10-25 at p. 13; Dkt. No. 13.)  On appeal, the Appellate Division affirmed, except that it remanded the matter so that the judgment could be modified to revise the custodial term to forty-two years and 322 days as petitioner's eight-five percent parole disqualifier had been reduced from 36.55 years to 36.45 years.  The New Jersey Supreme Court denied certification on petitioner's PCR petition on November 18, 2011 without discussion.  (*See* Dkt. No. 10-22.)

In May, 2012, this Court received petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Respondent has filed an answer opposing the petition on the merits. Petitioner did not file a reply.

### III.    HABEAS CORPUS LEGAL STANDARD

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws or treaties of the United States.  *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254).  Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (Apr. 24, 1996), applies.  *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision."  *Id.* (citations omitted).  A federal habeas court making an unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  *See Williams v. Taylor*, 529 U.S. 362,

409 (2000).  Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  The petitioner carries the burden of proof and with respect to review under § 2254(d)(1) and that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision.  *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008).  Furthermore, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  Additionally, AEDPA deference is not excused when state courts issue summary rulings on claims as "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

## IV.    DISCUSSION

All of petitioner's claims argue that he is entitled to federal habeas relief due to ineffective assistance of counsel.  The legal standard in analyzing an ineffective assistance of counsel claim was set forth by the United States Supreme Court in *Strickland v. Washington*, 466

U.S. 668 (1984).  First, the petitioner must show that considering all of the circumstances, counsel's performance fell below an objective standard of reasonableness.  *See id.*; *see also Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013).  Petitioner must identify acts or omissions that are alleged not to have been the result of reasonable professional judgment.  *See Strickland*, 466 U.S. at 690.  "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Id.*

Second, a petitioner must affirmatively show prejudice, which is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *See id.* at 694; *see also McBride v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012).  The reasonable probability standard does not require certainty or even a preponderance of the evidence.  *See Boyd v. Waymart*, 579 F.3d 330, 354 (3d Cir. 2009).  "In the context of pleas a [petitioner] must show the outcome of the plea process would have been different with competent advice."  *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (citations omitted).  "[W]hen evaluating the petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, [the petitioner is required] to show that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial."  *Id.*  at 1384-85 (citations omitted).

In assessing the resolution of an ineffective assistance of counsel claim by the state courts under AEDPA, there is an additional consideration:

> [t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a

> United States district court.  Under AEDPA, though, it is a
> necessary premise that the two questions are different.  For
> purposes of § 2244(d)(1), an *unreasonable* application of federal
> law is different from an *incorrect* application of federal law.  A
> state court must be granted a deference and latitude that are not in
> operation when the case involves review under the *Strickland*
> standard itself.

*Harrington*, 131 S. Ct. at 785 (internal quotation marks and citation omitted) (emphasis in

original).

A. Claim I – Failure to Advise on Minimum Parole Disqualifier

In Claim I, petitioner argues that trial and appellate counsel were ineffective by failing to

properly advise him on the applicable minimum parole disqualifier that he was facing.  Petitioner

asserts that trial counsel indicated to him that he was facing a minimum mandatory period of

parole ineligibility of thirty years.  The Appellate Division found that all of petitioner's

ineffective assistance of counsel claims lacked sufficient merit to warrant discussion in a written

opinion.  Therefore, the last reasoned decision on this Claim was from the Law Division which

denied petitioner's PCR arguments from the bench.  That court stated as follows:

> I am struck by the extent to which Judge Baxter engaged the
> defendant in the lengthy discussion at the time of sentencing, and
> despite the heinousness of the crime, the Court's analysis whether
> to grant post-conviction relief must rely on the facts of the
> argument for post-conviction relief, because regardless of that to
> which a defendant has pled or that about which a defendant has
> been convicted by a jury the process must be fair.  The process
> must be correct, and the process must be exemplary.  And when I
> say the process I mean the sentencing process, the plea colloquy,
> the information available to the Court, the information available to
> the defendant.
>
> So in arriving at my conclusion I am giving no heightened or
> lessened scrutiny to the matter because of the nature of the crime.
> The first argument about ineffective assistance of counsel, and we
> know that that – *Strickland* is the case that tells us what ineffective
> assistance of counsel is, and applying the *Strickland* standards a
> defendant has show [sic] not only that he fell below an objective

standard, but that he was prejudiced.  But for counsel's unprofessional error, the results would have been different. The Appellate Division tells us what a prima facie case is in *State v. Cummings* 21 NJ Super 154 and cautions us that a bald assertion is not sufficient.

I will accept counsel Kraft representation that the certification signed by his client should be applied to the facts contained within the brief as being a certification necessary to be submitted with a PCR.  And the three elements – the three factors that counsel raises are; one, a discrepancy between – a calculation error, the failure to pursue an insanity defense, mental health issues, and trial counsel coaching.

Let me first deal with the issue of the years.  While it is true that in the plea agreement there is a reference to 30 years an 85 percent of a 43-year sentence.  It is also true that at another point in the plea agreement it tells us that it could be between 30 years and 63.9 years.

Given that discrepancy, the Court then looks to what was spoken at the plea colloquy.  What is it that Mr. Alivera, Jr. was told and how did he respond too it?

Now, the information that I just received about – well, we'll get to the mental health issues in a moment.  At the time of the plea colloquy the defendant was advised that D-3 to 4 and D-7 line 2 to line 13, that he would have to serve "approximately 36 ½ years with 36.45 years."  There is a one tenth of a percent difference, one tenth of a year, 36 days.

In the context of a 43-year sentence and in the context of the potential exposure to 63.9 years the Court does not find that a 36-day discrepancy rises to the level of one that warrants conducting a hearing to explain that discrepancy, rather, the Court is going to enter a modified Judgment of Conviction changing it from 36.55 years to 36.45 years, because that is the sentence to which Mr. Alivera pled.

And while I find it de minimus with regard to whether it warrants conducting a hearing, I do find that that's what the transcript says, and so I'm going to exercise my – such equitable powers that I might have that the Appellate Division will either agree or disagree that I have.  I'm going to reduce the sentence by that 36 days, because that's what it says.

> The calculation error, the reference to 30 days in the plea
> agreement I find is overridden by what was clearly spoken at the
> plea colloquy.  It could have been retracted then.  It could have
> been withdrawn then but it wasn't.  I'm going to find that it was a
> calculation error at the time the plea agreement was entered, and
> I've received nothing that says I would have rejected the plea and
> gone to trial if it was 36.55 rather than 36.45.
>
> I guess what I'm saying is to me that is – that to me does not –
> even giving the defendant the benefit of the doubt – and the Court
> said approximately 36.45.  The Court didn't say exactly, but that
> the number Mr. Alivera heard and that's the number he's subject
> to.
>
> Now, I trust that he understands that doesn't mean when he's going
> to be paroled.  It's just his first available date for parole eligibility.
> It's a mandatory minimum.  It's how much he has to serve before
> he becomes eligible for parole.

(Dkt. No. 10-25 at p. 8-10.)

As noted by the Law Division, petitioner's plea agreement signed by him contained different figures for the minimum parole ineligibility period.  Indeed, at one point, the plea agreement states that if petitioner pleads guilty he is subject to a minimum mandatory period of parole ineligibility of thirty years to sixty-three years and four months.  (*See* Dkt. No. 10-2 at p. 2.)  The agreement is more specific with respect to petitioner's parole ineligibility period when it later states that the prosecutor has agreed to recommend a sentence of forty-three years subject to an eighty-five percent parole ineligibility, 36 ½ years.  (*See id.*)  During the plea colloquy, the state judge and petitioner engaged in the following colloquy:

> Q:  Did you understand that the No Early Release Act provides that
> a person sentenced on the crime of murder must serve 85 percent
> of the sentence without parole eligibility and that's mandatory?
> And that that law further provides that upon your release you'll be
> subject to five years mandatory parole supervision.  [¶]  Did you
> understand those elements when you signed that special plea form?
> A:  Yes your Honor.
> Q:  Let me now review the plea agreement with you.  In return for
> your plea of guilty to murder, a crime of the first-degree, at the

time of sentencing which will be Friday, 29th of August at 9:00 a.m., in this courtroom, at that time the State will recommend that you be sentenced to 43 years in New Jersey State Prison of which 85 percent of it must be served without parole eligibility. *That equates to 36.45 years before you're parole eligible. That's not a promise or guarantee that you'll be paroled the minute you serve 36.45 years.* It simply means that's your first opportunity to even be considered for parole.

Also, you'll serve five years under parole supervision following your release from New Jersey State Prison. You'll have to pay $100 Violent Crime penalty, $75 Safe Streets assessment, $30 LEO penalty. Count 2 through 11 will be dismissed at the time of sentencing.

And finally, the plea agreement calls for you to give up your right to appeal. Technically you can file an appeal. But if you do so, the State would withdraw from the plea agreement – or could withdraw from the plea agreement and you would then go to trial. If that were to happen, the amendment to this indictment would be deleted and the words "by his own conduct" would then be reinstated. That would again subject you to the penalty of death. So if you were found guilty of murder as a capital offense, you would face the death penalty and then the other charges such as first-degree robbery could well – leaving disabled victim at the scene of the crime, terroristic threats, those could be sentenced consecutively. [¶] Do you understand, therefore, what it means to give up your right to appeal?

A: Yes, your Honor.

Q: I've now explained the entire plea agreement as I understand it to be. Is this also your understanding of it?

A: Yes, your Honor.

(Dkt. No. 10-23 at p. 6-8 (emphasis added).) Thus, petitioner was specifically told by the trial court that he was facing a 36.45-year parole ineligibility period if he pled guilty. As noted by the PCR court, however, the trial court made a calculation error as eighty-five percent of the forty-three-year sentence is actually 36.55 years. Accordingly, petitioner's judgment was subsequently modified by the PCR court to reflect the parole ineligibility period he was told by the trial court when it accepted petitioner's guilty plea.

Petitioner affirmatively agreed during his plea colloquy that he understood he was facing a 36.45-year period of parole ineligibility. Thus, despite anything that his counsel might have

purportedly told him, petitioner was clearly on notice about his parole ineligibility period by the time he pleaded guilty.  The PCR court noted that petitioner did not argue that he would have rejected the plea and gone to trial due to the 0.1 year difference in the parole ineligibility period between what he was told during the plea colloquy and what his initial sentence encompassed. Furthermore, the PCR court corrected the calculation error to reflect what petitioner was told during the plea colloquy and what he told the trial court he understood his plea to mean.

The state court's denial of this claim was not an unreasonable application of *Strickland*. Petitioner failed to show to a reasonable probability that he would not have pleaded guilty due to the initial 0.1 year discrepancy between what he was told during the plea colloquy and his original parole ineligibility period.  Furthermore, and perhaps most importantly, his parole ineligibility period is now exactly what he was told during his plea, and what he told the trial court he understood his plea to be.  Accordingly, petitioner fails to show that he is entitled to federal habeas relief on Claim I.[2]

B.  Claim II – Failure to Investigate Insanity/Diminished Capacity Defense & Competency

i.    *Failure to Investigate Insanity/Diminished Capacity Defense*

In Claim II, petitioner argues that trial counsel was ineffective for failing to provide a meaningful defense.  More specifically, he asserts that counsel never pursued an insanity or diminished capacity defense and failed to have an expert evaluate petitioner.  As noted previously, the Appellate Division denied petitioner's ineffective assistance of counsel claims without discussion.  Therefore, the last reasoned decision on this Claim came from the Law Division which denied petitioner's PCR arguments.  That court analyzed this issue as follows:

---

[2] To the extent that petitioner also raises this Claim against appellate counsel, it is worth noting that the same *Strickland* standard applies, *see Smith v. Robbins*, 528 U.S. 259, 285 (2000).  As petitioner failed to show prejudice, he is also not entitled to federal habeas relief as to his ineffective assistance of appellate counsel claim.

With regard to the failure to pursue an insanity defense, at the very outset the Court spoke to Mr. Alivera and said "you've been represented in this matter by Brad Wetheimer.  Have you been fully satisfied with the legal services he's provided?"  The defendant says "Yes, Your Honor."  The Court then says "Have you had the time and opportunity to review the discovery with Mr. Wertheimer in full and make an informed decision about whether to go to trial or instead to enter a plea of guilty?"  Answer:  "Yes, Your Honor."

At the time of sentencing, Mr. Wertheimer advised the Court that he had a long-standing psychiatric problem, a T-13-11 to 13, transcript, 2T, and that he had been "in and out of psychiatric hospitals basically for the rest of his life, and he advised he was taking Haldol and Depakote and Cogentin with other medications.

Judge Baxter, hearing this, clarified whether that mental health history rose to the level of a defense for a mitigating factor, and she said, "All right.  Well, let me just say this about the materials you mentioned, we will make a notation to the appropriate place on the presentence report that the defendant does have a longstanding psychiatric history.  I think it's self-evident, however, the psychiatric history that he had was not sufficient to rise to a defense because certainly as an extremely experienced and able defense lawyer, I know, Mr. Wertheimer, you had that issue reviewed.  So, clearly his psychiatric history no matter how longstanding it was, does not in any way mitigate, excuse or in any way diminish the responsibility that he had for the horrendous crime he committed, nor are you suggesting that.  I understand that."  Mr. Wertheimer:  "Yes.  That's correct, Judge."

The Judge also considered that when the defendant made a motion to withdraw his guilty plea . . . . And, he claimed at that time I have a mental health history and have been on and off medication my whole life and I was just using pep, pot, Xanax and other drugs while on the street.

The Defendant further claimed that counsel was not aware of defendant's mental health history, so that when he made an application to withdraw his guilty plea he said my lawyer was not aware of that.  That's just not true.  Mr. Wertheimer sent a three-page letter dated May 1st, 2003 detailing the defendant's psychiatric history.

So, the Court takes those facts and the continued questioning by the Court with regard to the medication, the Court, after he told the

Court he takes Chlorazine and Depakote, the Court says, "Do those in any way interfere with, compromise your ability to understand what's going on?" The defendant: "No." The Court: "Do they in any way interfere with your judgment?" The defendant: "No." So, the Judge went to great lengths to talk about the 36 ½ or 36.45 as it turned out. She advised him of the parole supervision term for the plea agreement, then the defendant admitted killing Margaret Sweeney.

So, the defendant himself said that his psychiatric history didn't interfere with his ability to understand the guilty plea or what was going on. Experienced trial counsel, if there was a chance at an insanity defense, didn't pursue it because it wasn't there. The defendant previously claimed that counsel was not aware of a psychiatric condition, yet it was placed on the record.

And, this is a case in which the Trial Judge was an experienced skilled Judge. The facts of the case in this context, handcuffing, duct-tapping and setting a human being on fire might connote insanity, but that wasn't there. And the Court asked the defendant and he said he knows what he's doing and it's not interfering with his entry of a plea.

Although he later tried to withdraw the plea and in trying to withdraw it misrepresented the facts as to what his attorney knew at the time.

In counsel's application for a PCR on the insanity defense the Court finds that that is simply, in the language of the case law, a bald assertion. If there was a psychiatric opinion or a certification or an affidavit indicating that, in fact, this defendant was insane or could have been insane or might have been insane, I think the Court would be obliged to look at that anew, but there is no such opinion or writing or certification or medical opinion. And the defendant himself said he knew what he was doing at the plea agreement, and the attempt to withdraw the plea was already engaged.

(Dkt. No. 10-25 at p. 10-12.).[3]

     In New Jersey:

---

[3] While the Appellate Division stated that it was denying relief on this issue without discussion, it did briefly mention that this issue is speculative and unsupported by any expert proof. (*See* Dkt. No. 10-19 at p. 8-9.) To the extent that this could be construed as the "last reasoned opinion" for AEDPA analysis, it would not change the resulting denial of habeas relief on this issue for the reasons discussed *infra*.

> [a] person is not criminally responsible for conduct if at the time of
> such conduct he was laboring under such a defect of reason, from
> disease of the mind as not to know the nature and quality of the act
> he was doing, or if he did know, that he did not know what he was
> doing was wrong.  Insanity is an affirmative defense which must
> be proved by a preponderance of the evidence.

N.J. STAT. ANN. § 2C:4-1.  With respect to diminished capacity in New Jersey, the relevant

statute states as follows:

> [e]vidence that the defendant suffered from a mental disease or
> defect is admissible whenever it is relevant to prove that the
> defendant did not have a state of mind which is an element of the
> offense.  In the absence of such evidence, it may be presumed that
> the defendant had no mental disease or defect which would negate
> a state of mind which is an element of the offense.

*Id.* § 2C:4-2.

Petitioner fails to show that he is entitled to federal habeas relief on his argument that

counsel was ineffective in failing to investigate an insanity/diminished capacity defense.  First,

as noted by the PCR Court, petitioner's trial counsel noted on the record that he was aware of

petitioner's extensive psychiatric history at sentencing.  (*See* Dkt. No. 10-24).  Thus, this is not a

case where counsel was unaware of petitioner's prior mental history prior to the plea.  Indeed,

prior to the plea hearing, petitioner's trial counsel detailed petitioner's extensive mental history

to the prosecutor in a letter dated May 1, 2003.  (*See* Dkt. No. 10-4 at p. 7-9.)  Thus, trial counsel

was clearly aware of the issues associated with petitioner's mental health such that the state

court's finding that counsel was aware of it was not an unreasonable determination of the facts.

Furthermore, petitioner has not shown that the state court's analysis under the prejudice

prong was an unreasonable application of *Strickland*.  Indeed, during the PCR proceedings, the

state court found that there was no factual or opinion evidence to support that petitioner was

insane at the time of the murder.  Petitioner has come forward with no evidence to support that

he was insane or acted with diminished capacity at the time of the murder such as in the form of opinion or factual evidence.  Thus, even if counsel's actions fell below an objective standard of reasonableness, petitioner has not shown that but for these errors, he would have insisted on going to trial rather than pled guilty.  *Accord Johnson v. Hauck*, No. 07-5109, 2008 WL 5146522, at *13 (D.N.J. Dec. 8, 2008) (finding that petitioner failed to show prejudice where PCR and Appellate Division found no factual or opinion evidence to support insanity defense); *see also Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (holding that the prejudice that must be shown is that but for counsel's failure to investigate, defendant would not have entered a guilty plea and proceeded to trial).  Stated differently, even if petitioner showed that the state court unreasonably applied the first prong of *Strickland,* petitioner is still not entitled to federal habeas relief on this issue as the state court did not unreasonably apply *Strickland*'s prejudice prong.

ii.     *Failure to Investigate Competency to Plead Guilty*

In addition to arguing that counsel should have investigated an insanity/diminished capacity defense with respect to the underlying murder charge, petitioner also argues that counsel should have had an expert evaluate him to determine whether he was competent to enter the guilty plea in the first place.  The Appellate Division and the New Jersey Supreme Court denied this issue without discussion.[4]  However, this summary denial is still entitled to AEDPA deference.  *See Harrington*, 131 S. Ct. at 784-85.

"[T]he standard for competency to plead guilty is whether the criminal defendant was able to consult with his lawyer with a reasonable degree of rational understanding and whether he had a rational understanding of the nature and the object of the proceedings against him."[5]

---

[4] It does not appear that the Law Division analyzed this claim from the bench in denying PCR relief.

[5] The competence to plead guilty is subject to the same standard as competence to stand trial. *See Taylor v. Horn*, 504 F.3d 416, 440 (3d Cir. 2007) (citations omitted)

*Nara v. Frank*, 488 F.3d 187, 202 (3d Cir. 2007) (citing *Godinez v. Moran*, 509 U.S. 389, 396

(1993); *United States v. Cole*, 813 F.2d 43, 46 (3d Cir. 1987); *United States ex rel. McGough v.*

*Hewitt*, 528 F.2d 339, 342, n.2 (3d Cir. 1975)).  In the context of trial counsel's failure to request

a competency hearing or evaluation, the United States Court of Appeals for the Third Circuit has

stated that:

> [c]ounsel's failure to request the trial court to order a hearing or
> evaluation on the issue of the defendant's competency . . . could
> violate the defendant's right to effective assistance of counsel
> provided there are sufficient indicia of incompetence to give
> objectively reasonable counsel reason to doubt the defendant's
> competency, and there is a reasonable probability that the
> defendant would have been found incompetent to stand trial had
> the issue been raised and fully considered.

*Taylor*, 504 F.3d at 438 (quoting *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001)).

Petitioner fails to show that he is entitled to federal habeas relief on this issue as the state

court denial was not an unreasonable application of the *Strickland* prejudice prong.  Petitioner

has come forward with no evidence to indicate to a reasonable probability that he would have

been found incompetent if only his attorney had asked for a hearing.  *See Karenbauer v. Beard*,

390 F. App'x 73, 80 (3d Cir. 2010) (citing *Taylor*, 504 F.3d at 439).  Accordingly, petitioner fails

to show that he is entitled to federal habeas relief on any of his arguments within Claim II.

C.  Claim III – Coaching

In Claim III, petitioner asserts that trial counsel impermissibly coached him into what to

say during the plea colloquy and did not explain the plea forms.  The last reasoned decision on

this Claim was from the Law Division which denied petitioner's PCR petition.  That court

analyzed this Claim as follows:

> As to the assertion that trial Counsel coached him on how to
> answer questions, the Court finds that's just a bald assertion.

Trial counsel always explain to their clients what's going to happen at a plea agreement. The Judge asked if Mr. Alivera knew what he was doing. He said he did. He said he was averment with the services. [sic] Now, as a sitting judge, I've had litigants right in front of me say I didn't say that, I didn't want to say that, the lawyer made me say that, and at that time I stepped away from the plea agreement. I would have – you know, I would, but you can't just say that. It's just a bald assertion.

Did his lawyer tell him to say that he killed a woman? What did the lawyer tell him to say? Did the lawyer tell him to say I'm not taking medications, I'm taking my medications? Did the lawyer tell him to say, yeah, I'm happy with your services? To me, that doesn't – that is nothing other than a bald assertion, especially in the context of a subsequent application, with draw a plea agreement which contained materially incorrect facts.

The mental health information was there. It was provided to the Court. It was provided to the Prosecutor's Office. As the Prosecutor has argued, there was a tremendous benefit derived by your client from the plea agreement.

The criteria set forth in *Strickland* for finding ineffective assistance of counsel require that the representation falls below an objective standard. I haven't heard anything that falls below an objective standard, that he was prejudiced, that counsel was unprofessional, the results would have been different.

So, the Court rejects that a prima facie case of ineffective assistance of counsel has been tendered[.]

(Dkt. No. 10-25 at p. 12-13.)[6]

Petitioner fails to show that he is entitled to federal habeas relief on this Claim as the state court's denial was not an unreasonable application of clearly established federal law. The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary

---

[6] The Appellate Division briefly discussed Claim III in its opinion despite the fact that it also said that all of petitioner's claims lack sufficient merit to warrant discussion. Specifically, it stated that it concurred with the PCR judge that petitioner's contention that he was improperly coached by trial counsel was belied by the plea colloquy and that trial counsel's skillful negotiations spared him exposure to potential capital consequences. (*See* Dkt. No. 10-19 at p. 9.) To the extent that this discussion by the Appellate Division should be considered the "last reasoned decision" for purposes of AEDPA review, it does not change the outcome of this Claim for the reasons discussed *infra*.

and intelligent choice among the alternative courses open to a defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (citations omitted). The voluntariness of a plea "can be determined only be considering all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970) (citations omitted). The United States Supreme Court has explained that:

> the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. Stewart*, 977 F.2d 81, 84 (3d Cir. 1992) ("The ritual of the [plea] colloquy is but a means toward determining whether the plea was voluntary and knowing. A transcript showing full compliance with the customary inquires and admonitions furnishes, strong, although not necessarily conclusive, evidence that the accused entered his plea without coercion and with an appreciation of its consequences.").

The following colloquy took place between petitioner and the trial judge during the plea proceedings:

> Q. You are John Alivera, Jr.?
> A. Yes.
> Q. And, Mr. Alivera, I understand that you're before the Court today intending to plead guilty to the first-degree crime of murder. Is that correct?
> A. Yes, your Honor.
> Q. Let me review the details with you. The indictment as amended says that on August 9, of 2002 in Woodlynne you knowingly or purposely caused the death of Margaret Sweeney or you knowingly or purposely caused serious bodily injury which resulted in her death. [¶] Is that your understanding of the details of the charge to which you would be pleading guilty?
> A. Yes, your Honor.

Q.  Do you understand that by pleading guilty you give up each of the following constitutional rights?

Q.  Yes, your Honor.

Q.  Let me say them first, then I'll ask you.  Right to trial by jury. Right to remain silent and not incriminate yourself.  Right to confront and cross-examine the prosecution's witnesses.  The right to call your own witnesses.  And you also give up the right to present any motions or defenses that might have been available to you.  [¶]  Do you understand that by pleading guilty you give up all of those rights?

A.  Yes, your Honor.

Q.  You've been represented in this matter by Brad Wertheimer. Have you been fully satisfied with the legal advice he has provided?

A.  Yes, your Honor.

Q.  Have you had the time and opportunity to review the discovery with Mr. Wertheimer in full and to make an informed decision about whether to go to trial or instead to enter a plea?

A.  Yes, your Honor.

Q.  Are you pleading guilty voluntarily and of your own free will?

A.  Yes, your Honor.

Q.  Are you under the influence of any medication or anything else that would today interfere with your judgment?

A.  Take medication, but no, I'm not under the influence.

Q.  What medication is it?

A.  Take Thorazine and Depakote.

Q.  Do those in any way interfere with your – compromise your ability to understand what's going on?

A.  No.

Q.  Do they in any way interfere with your judgment?

A.  No, your Honor.

Q.  Okay.  On the table in front of you is a three-page plea form. Did you sign the third page and initial the other two?

A.  Yes, your Honor.

Q.  When you did so did you understand the questions and provide truthful answers?

A.  Yes, your Honor.

Q.  Did you also sign the supplemental plea form for the No Early Release Act?

A.  Yes, your Honor.

Q.  When you signed that document did you understand that by pleading guilty to murder that is a crime that falls within the purview of a law known as No Early Release Act?  Did you understand that?

A.  Yes.

Q.  Did you understand that the No Early Release Act provides that a person sentenced on the crime of murder must serve 85 percent of the sentence without parole eligibility and that's mandatory? And that that law further provides that upon your release you'll be subject to five years mandatory parole supervision.  [¶]  Did you understand those elements when you signed that special plea form?

A.  Yes, your Honor.

Q:  Let me now review the plea agreement with you.  In return for your plea of guilty to murder, a crime of the first-degree, at the time of sentencing which will be Friday, 29th of August at 9:00 a.m., in this courtroom, at that time the State will recommend that you be sentenced to 43 years in New Jersey State Prison of which 85 percent of it must be served without parole eligibility.  That equates to 36.45 years before you're parole eligible.  That's not a promise or guarantee that you'll be paroled the minute you serve 36.45 years.  It simply means that's your first opportunity to even be considered for parole.

Also, you'll serve five years under parole supervision following your release from New Jersey State Prison.  You'll have to pay $100 Violent Crime penalty, $75 Safe Streets assessment, $30 LEO penalty.  Count 2 through 11 will be dismissed at the time of sentencing.

And finally, the plea agreement calls for you to give up your right to appeal.  Technically you can file an appeal.  But if you do so, the State would withdraw from the plea agreement – or could withdraw from the plea agreement and you would then go to trial. If that were to happen, the amendment to this indictment would be deleted and the words "by his own conduct" would then be reinstated.  That would again subject you to the penalty of death. So if you were found guilty of murder as a capital offense, you would face the death penalty and then the other charges such as first-degree robbery could well – leaving disabled victim at the scene of the crime, terroristic threats, those could be sentenced consecutively.  [¶]  Do you understand, therefore, what it means to give up your right to appeal?

A:  Yes, your Honor.

Q:  I've now explained the entire plea agreement as I understand it to be.  Is this also your understanding of it?

A:  Yes, your Honor.

Q.  Has anybody mentioned anything to you or promised you anything to get you to plead guilty that's different from what I said?

A.  No. your Honor.

. . . .

Q.  Has everything that you've told me today been the truth?

A.  Yes.

Q.  Have you understood everything today?
A.  Yes.

(Dkt. No. 10-23 at p. 3-8, 10.)

As illustrated above, petitioner expressly indicated during the plea colloquy that he was pleading guilty voluntarily and of his own free will, that nobody mentioned anything to him or promised him anything to get him to plead guilty and that he understood everything that was taking place during the plea colloquy.  Petitioner comes forward with no evidence besides his general statement that counsel coached him with what to say during the plea colloquy.  This is insufficient to overcome the strong presumption of verity with respect to petitioner's statements as expressed during the plea colloquy that he was pleading guilty of his own free will and that no one mentioned or promised him anything to get him to plead guilty.  *Accord Stuart v. Phelps*, No. 09-0250, 2011 WL 1302929, at *4 (D. Del. Apr. 1, 2011) ("[T]he statements Petitioner made during the plea process belie his present allegations that counsel coerced him to plead guilty[.]").  Accordingly, petitioner is not entitled to federal habeas relief on this Claim as its denial was not the result an unreasonable application of clearly established federal law nor was the denial based on an unreasonable determination of the facts.

D.  Claim IV – Failure to Provide Transcripts, Motions and Grand Jury Minutes

In Claim IV, petitioner asserts that counsel was ineffective by failing to provide him with transcripts, motions and grand jury minutes so as to allow him the opportunity to determine the strength of the prosecution's case against him.  Petitioner raised this issue in his PCR proceedings before the Law Division (*see* Dkt. No. 10-11 at p. 17.).  However, this issue is unexhausted as petitioner did not raise it to all three levels of the New Jersey state courts as it was not raised on appeal to the Appellate Division or to the New Jersey Supreme Court.  (*See* Dkt. Nos. 10-15 & 10-20.)  While this Claim is unexhausted, a federal court can address the

merits of an unexhausted claim "in 'the interests of justice . . . if it is clear petitioner has failed to state a colorable claim. . . .'" *Phillips v. Stickman*, 298 F. App'x 135, 137 (3d Cir. 2008) (quoting *Lambert v. Blackwell*, 134 F.3d 506, 514 (3d Cir. 1998) (citing *Granberry v. Greer*, 481 U.S. 129, 136 (1987))).

In this case, petitioner has not stated what these purported transcripts, motions and/or grand jury minutes contained that would have caused him, to a reasonable probability, to plead not guilty and go to trial.  Accordingly, petitioner fails to show that he was prejudiced under *Strickland* and the Claim will be denied.

E. Claim V – Cumulative Error

Finally, in Claim V, petitioner argues that he is entitled to federal habeas relief based on cumulative error.  The United States Court of Appeals for the Third Circuit has stated that a cumulative error argument constitutes a standalone constitutional claim that must be exhausted. *See Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 541 (3d Cir. 2014).  Petitioner raised the issue of cumulative error in his PCR appeal.  The Appellate Division denied petitioner's ineffective assistance of counsel claims without discussion as previously noted.  However, petitioner did not raise Claim IV in his PCR appeal.  Thus, the cumulative error issue raised in this federal habeas proceeding (that presumably includes the issues raised in Claim IV) may not be exhausted since the cumulative error that the PCR courts decided was different as it did not include Claim IV.  Nevertheless, whether Claim V is exhausted or not does not change the outcome as petitioner fails to show that this Claim is even "colorable."  *See Phillips*, 298 F. App'x at 137 (stating where claim is unexhausted that merits of claim can be addressed where petitioner fails to present a colorable claim).

Errors that do not individually warrant federal habeas relief may sometimes warrant federal habeas relief when combined together. *See Albrecht v. Horn*, 485 F.3d 103, 109 (3d Cir. 2007) (citing *Marshall v. Hendricks*, 307 F.3d 36, 94 (3d Cir. 2002)) (footnoted omitted). In this case, petitioner fails to demonstrate to a reasonable probability that he would have not plead guilty and insisted on going to trial when his claims are analyzed together. As detailed above: (1) petitioner was eventually given the parole ineligibility period he was told during the plea colloquy; (2) he failed to show that counsel was unaware of his mental history; (3) he failed to come forward with evidence to support an insanity/diminished capacity defense such that he would have insisted on going to trial; (4) his bald allegations of coaching by trial counsel were insufficient to overcome the strong presumption of verity of his statements during the plea colloquy; and (5) he did not show how unnamed transcripts, motions or the grand jury minutes would have changed his decision to plead guilty. Accordingly, under these circumstances, the Court finds that petitioner has failed to show a "colorable" cumulative error claim. Therefore, Claim V also does not warrant granting federal habeas relief.

F.  Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003).  Applying this standard, the Court determines that a certificate of appealability should not issue in this case.

## V.   CONCLUSION

For the foregoing reasons, the habeas petition will be denied.  A certificate of appealability will not issue.  An appropriate order will be entered.


DATED:   November 25, 2014

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge
